# SUPREME COURT.

## HENRY BUDGE agt. NEWTON NORTHAM.

The *place of trial* of a cause may be changed, on the ground of *public excitement*, although there has been no effort made to try the cause, or even to empannel a jury in the county where the venue is laid. *(See* 1 *Hill,* 179.)

*Held* in this case, which is an action for libel imputing to the plaintiff the murder of his wife, that from the facts and circumstances disclosed on the motion of an extensive public excitement existing in the county, "there is reason to believe that a fair and impartial trial cannot be had," *(Code* 126,) in the county of Lewis, where the trial was ordered on the demand of the defendant.

*It seems,* that the effort of the defendant made throughout the county, in opposing the motion and to retain the venue, resulting in procuring more than 200 affidavits, would of itself, almost create an excitement unfavorable to that repose and equanimity, and absence of bias, with which all jurors should be summoned and courts of justice held.

Place of trial changed from the county of Lewis to the county of Herkimer.

*Oneida Special Term, December,* 1860.

THIS was a motion made on behalf of plaintiff to change the place of trial in this cause, from the county of Lewis, where it was ordered on the demand of the defendant, and restore it to the county of Oneida, where it was originally fixed in the complaint.

DOOLITTLE & HUNT, *for plaintiff.*
E. A. BROWN, *for defendant.*

BACON, Justice.   This application is made under the 126th section of the Code, which provides, among other things, that the court may change the place of trial in any case "where there is reason to believe an impartial trial cannot be had" in the county where the venue is.   It is founded on a number of affidavits, setting forth a variety of facts which it is insisted show that an extensive public excitement in relation to this case exists in the county of Lewis, and the opinions of a very respectable array of wit-

Budge agt. Northam.

nesses that such is the state of feeling there that an impartial trial cannot be had. It is opposed by a very large number of affidavits from various parts of the county, to the effect that in the opinion of the affiants no more excitement exists than is usual in such cases. Some of these state that there is no " undue excitement," and nearly all express the opinion that in their judgment a fair and impartial jury could be obtained in the county of Lewis to try this or any other cause to which the plaintiff is or may be a party.

A legal objection is in the first place interposed by the defendant's counsel, which; it is claimed, should defeat this motion, irrespective of any question made by the affidavits. It is conceded that no attempt has been made to try the cause, or to empannel a jury for that purpose, and it is insisted that until the experiment has been made, and failed, the motion is premature. Some cases are cited, and particularly the case of the *People* agt. *Wright*, (5 *Howard*, 23,) which certainly gives countenance to this position. But that case even concedes that the actual experiment is not the only admissible proof that a fair trial cannot be had; and the case of *The People* agt. *Webb*, (1 *Hill*, 179,) expressly decides that the place of trial may be changed, although there has been no effort made to try the cause, or even to empannel a jury, in the county where the venue is laid. The same rule precisely is laid down in the more recent case of *The People* agt. *Long Island Railroad Company, reported* 16 *How.*, 106, *and also in* 4 *Park. C. Rep.*, 602. It is said by Judge Cowen, in the case of *People* agt. *Webb*, that the intimation in the earlier cases that without the experiment of an attempt to obtain a jury the change could not be made, was entirely *obiter*. " To make such an experiment essential," he adds, " would seem to be quite dangerous. It is the very thing which the law seeks to avoid, when it is seen that the party may, and probably will, be drawn into a trial by a jury, who under an influence of which they may themselves be hardly conscious—an influence which

perhaps no human segacity can detect—may pronounce a verdict against him, and conclude his rights forever."

There is no foundation, therefore, for this objection to the motion, and it is to be disposed of on the merits. On this point I do not think any extended discussion necessary. There are some patent, notorious, undisputed facts, that the court could almost take judicial notice of, that would render nearly superfluous a far greater array of opinions than has been spread out in the two hundred affidavits that have been produced by the defendant on this motion. The action in the case is for a libel alleged to have been uttered in a doggerel ballad largely circulated in Lewis county, plainly implicating the plaintiff in the crime of murder on the person of his wife. The answer, among other things, sets up a justification. Two coroners' inquests have been held upon the subject of the alleged murder in Lewis county, the last of which was in April, continuing for many days, and attended by a crowd of witnesses and spectators attracted by curiosity and interest, and it resulted in a verdict of homicide. The coroner on an examination before him committed the plaintiff to custody, from which he was released by *habeas corpus* in the month of May last. At the sitting of the oyer and terminer in Lewis county, in the latter part of the same month, an attempt was made to procure an indictment for murder against the plaintiff, which failed, but at the ensuing session, in that county, in September, a second presentation was made to the grand jury, by whom a bill was found, and the plaintiff is now under indictment for the murder of his wife, the precise imputation contained in the alleged libel, and necessarily requiring on the trial an investigation into the truth or falsity of that charge.

Previous to the sitting of the first grand jury, it is proved by three affidavits on the part of the plaintiff, and the allegation is nowhere met or denied in the opposing affidavits, the defendant in this suit caused to be printed and circu-

lated a pamphlet containing a statement of all the evidence taken on the second inquest before the coroner. He especially took pains, as the affidavits disclose, to have this made public a short time before the day appointed for the assembling of the grand jury, stating expressly to one person with whom he deposited thirty copies, that he desired to have them distributed before the grand jury should meet, as they might have great influence on the minds of the jury and charged the party with whom he left these pamphlets to give them away if they could not otherwise be disposed of. It is further stated, and not contradicted, that on the Saturday afternoon and evening before the court, large quantities of the same pamphlet were thrown into the doors of stores and houses in Lowville, and several hundreds, it is alleged, were thus distributed in that place. Without denying these facts, it is insisted on behalf of the defendant, that the pamphlet only stated what had actually taken place on the inquest and gave the evidence without comment. If this be so, it would not the less betray a desire to pre-occupy men's minds with the case, and forestall the public opinion, by putting in a permanent form and then sowing broadcast a statement of the case necessarily *exparte*, and calculated to lead the mind to one conclusion.

There are other facts disclosed in this case to which I need only allude, some of which are notorious and unquestioned, and others only faintly, if at all, denied. Among them are—the existence of a warm, and in some of its aspects, a bitter religious controversy, in which the plaintiff has become involved. I do not, of course, assume to decide, nor even stop to inquire, who is right or wrong in this warfare. The fact is all that is important for my present purpose. That the questions connected with the plaintiff's guilt or innocence of the alleged charges, have produced to a certain degree personal and family alienations, have entered to some extent into the politics and local elections of the county of Lewis cannot be questioned

on the evidence before me.   The alleged murder, and its incidents and accessories have become topics of conversation by the fireside, and on the highways and thoroughfares, so that in the language of some of the affidavits, no subject has ever before produced so great and pervading an excitement in the county of Lewis.   Indeed, we have only to open our ears to hear the " common speech of the people," and almost every breeze from the north wafts the sound to us.   The defendant's counsel frankly admitted that there were conversations to a considerable extent on the subject of this supposed domestic tragedy, and that there was some excitement, but not more, he claimed, than is incident to, and should properly be exhibited in view of such a case.   If this be so, then the public mind is in an unfit state to be called upon to dispose of a question involving all that the plaintiff has at stake in this world, and the issue of which is equivalent to one of life or death to him. Indeed, I might almost say, that the effort which has been made throughout the county to oppose this motion, resulting in procuring more than two hundred affidavits, would, of itself, almost create an excitement unfavorable to that repose and equanimity, and absence of bias, with which all jurors should be summoned, and courts of justice held.

In some of the affidavits on the part of the defendant it is conceded that in the opinion of the parties making them, the indictment could not be fairly and impartially tried in Lewis county.   If it should be necessary for the attainment of justice in a trial on that indictment, that it should be removed to another county, surely that would seem to be an end of the question, for it is clear that the same inquiry is involved in this civil suit, and with much less protection to the plaintiff, inasmuch as in the criminal case he would be entitled to twenty peremptory challenges, and in this suit to only two.

I need hardly add, that in the county of Lewis, as well as in Oneida, and to some extent in Jefferson, the circum-

stances of this case have been freely discussed in the public papers, and opinions expressed on all sides, both in condemnation and exculpation of the plaintiff in respect to the charge made against him, and which cannot have failed to leave their impression on the public mind. In the case of the *People* agt. *Webb*, the solitary fact which was relied upon, and on which the court acted in changing the place of trial, was, that the defendant, after his indictment and arraignment, published in his own paper and one other, and caused to be circulated in the county of Otsego, an account of the proceedings calculated to prejudice the prosecutor, and preoccupy the minds of those who might be summoned as jurors to try the cause. So far as the public sentiment is liable to be influenced and affected by such efforts, it is not material on which side this machinery has been put in motion. The fact of its existence might be equally prejudicial to both parties, and the protection of the defendant as well as of the plaintiff require the venue to be changed.

From these facts and considerations, I have arrived at an undoubting conviction that, in the language of the Code, " there is reason to believe that a fair and impartial trial cannot be had" in this case in the county of Lewis, and it only remains to determine where it shall be sent. The plaintiff asks to restore it to the county of Oneida; but for some of the reasons heretofore considered, and others which have reference to the convenience of the parties and witnesses, and the ordinarily crowded state of the circuit calenders in that county, I am unwilling to send it there for trial. Jefferson county has, to some extent, from its local position, and its large business and social relations with Lewis, been permeated by some of the same influences that have operated on the public mind in the latter county. Upon the whole, I am of opinion that in the county of Herkimer, a fair field would be open to both parties for the disposal of this case. This matter has not, I suppose, to any appreciable extent—if at all—been ventilated in that

region.    The county seat is accessible by railroad for nearly all the distance between it and the county of Lewis; the calendars are light, and this cause could be tried without any serious interruption to the business properly belonging to that locality.    The jurors summoned and attending there will compare favorably with any in the district, as men of intelligence and integrity, little liable to extraneous influences, and possessing those best qualifications of jurors, sound heads and honest hearts.    I need hardly add that I say this without any disparagement or distrust of the intelligence and general impartiality of the citizens of Lewis. From the gentlemen whose affidavits have been read on this motion, I could select a dozen juries to whom I should be willing to commit almost any imaginable case; but no such range is to be had in the limited panel from which jurors to try this case must be drawn, and if there is ground for an apprehension that injustice will be done to either party, the case should be sent where there is the least liability to fear such a result.

I was at first disposed to send the case entirely out of the district and to some more remote county for trial.    But I have been deterred from this by two considerations.    One is that it would be unjust to send to other districts, to the interruption of their appropriate and necessary business, cases which, in fairness to all parties, can be tried at home. The other is, that in the affidavit of the defendant in the other case, where the same motion, grounded substantially on the same facts and circumstances, is pending, a somewhat vague, but nevertheless sufficiently intelligible intimation is conveyed that the minds of the judges in this district have been sought to be influenced and prejudiced unfavorably towards that party.    This is followed by a more specific allegation in respect to one of the judges, that he has maintained some social relations supposed to be adverse to the interests of the same party.    The intimation hardly rises to that point of respectability, or even of

decency, that would require notice, and I only allude to it that I may characterize the suggestions as one utterly "unfit to be made," and of which I should hope the party who has ventured to put it on record, will in a cooler moment be heartily ashamed. But it gives me occasion to say that by no act of mine shall the implication arise that the judges of this district are incapacitated or unfit for any reason to try the causes of any suitors that may appear before them, and any suggestion to the contrary, come from what quarter it may, will be treated with quiet indifference or silent contempt. So far as I am concerned, the case will remain in this district.

An order may be entered changing the place of trial of this cause from the county of Lewis to the county of Herkimer, but with liberty to the parties to select any other county that they can mutually agree upon.

*Henry Budge* agt. *Caleb Lyon.* The same order will be enforced in this cause.